UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:21-cv-672-FDW
3:19-cr-221-FDW-DCK-1

| | |
|---|---|
| DENT HALL TURNER, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | |
| ) | **ORDER** |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

**THIS MATTER** is before the Court on Petitioner's *pro se* Amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence [Doc. 3], Motion to Amend [Doc. 14], Motion to Expand the Record [Doc. 15], Motion for Extension of Time [Doc. 19], and proposed Second Amended Motion to Vacate [Doc. 20-1].

**I.  BACKGROUND**

Petitioner was charged in the underlying criminal case with two counts of possession with intent to distribute five grams or more of actual methamphetamine and aiding and abetting the same in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) and 18 U.S.C. § 2 (Counts One and Two). [3:19-cr-221 ("CR") Doc. 3].

Petitioner pleaded guilty to Count One pursuant to a written Plea Agreement in exchange for the dismissal of Count Two. [CR Doc. 15 at ¶¶ 1, 2]. Petitioner admitted that he is, in fact, guilty as charged in Count One. [Id. at ¶ 1]. The Plea Agreement provides that Petitioner's breach of the agreement would "permit the United States to proceed on any dismissed, pending, superseding or additional charges.…" [Id. at ¶ 4]. The Plea Agreement explains that the offense is

1

punishable by a minimum term of five to 40 years' imprisonment, a $5,000,000 fine and at least four years of supervised release. [Id. at ¶ 5].

The parties agreed to jointly recommend that: the amount of methamphetamine that was known to or reasonably foreseeable by Petitioner was in excess of 50 grams but less than 150 grams, with a base offense level of 30; the plea is timely for purposes of acceptance of responsibility, if applicable; and if the Court determines from Petitioner's criminal history that the career offender provision (U.S.S.G. § 4B1.1) or the armed career criminal provision (U.S.S.G. § 4B1.4) of the U.S. Sentencing Guidelines applies, such provision may be used in determining the sentence. [Id. at ¶ 8]. The parties remained free to argue their respective positions regarding any other specific offense characteristics, cross-references, special instructions, reductions, enhancements, departures, and adjustments to the offense level, and to seek a departure or variance from the applicable guideline range at sentencing. [Id.]. The Plea Agreement further provides that: the Court would consider the advisory U.S. Sentencing Guidelines; the Court had not yet determined the sentence; any estimate of the likely sentence is a prediction rather than a promise; the Court would have the final discretion to impose any sentence up to the statutory maximum for each count; the Court would not be bound by the parties' recommendations or agreements; and Petitioner would not be permitted to withdraw his plea as a result of the sentence imposed. [Id. at ¶ 7].

The Plea Agreement provides that there is a factual basis for the guilty plea, and that Petitioner read and understood the written Factual Basis that was filed with the Plea Agreement, which may be used by the Court, U.S. Probation Office, and United States without objection for any purpose, including to determine the applicable advisory guideline range or the appropriate sentence. [Id. at ¶ 11]. The Plea Agreement further provides that the Factual Basis does not

necessarily represent all of the conduct relevant to sentencing, and that the Government may submit a Statement of Relevant Conduct to the Probation Office and present the Court with additional relevant facts for purposes of sentencing. [Id. at ¶ 12].

The Plea Agreement sets forth the rights Petitioner was waiving by pleading guilty, including the right: to withdraw the guilty plea once the Magistrate Judge has accepted it; to be tried by a jury; to be assisted by an attorney at trial; to confront and cross-examine witnesses; and not be compelled to incriminate himself. [Id. at ¶¶ 13-15]. The Plea Agreement acknowledges that Petitioner had discussed with defense counsel his post-conviction and appellate rights, and he expressly waived those rights except for claims of ineffective assistance of counsel or prosecutorial misconduct. [Id. at ¶¶ 16, 17]. The Plea Agreement provides that "[t]here are no agreements, representations, or understandings between the parties in this case, other than those explicitly set forth in this Plea Agreement, or as noticed to the Court during the plea colloquy and contained in writing in a separate document signed by all parties." [Id. at ¶ 28].

The Factual Basis that was filed along with the Plea Agreement provides in relevant part:

> On or about October 13, 2016, … the defendant DENT HALL TURNER:
>
>> Did knowingly and intentionally possess with intent to distribute methamphetamine, a schedule II controlled substance; and
>>
>> The amount of controlled substance the defendant possessed was at least FIVE (5) grams of actual methamphetamine; and
>>
>> At the time the defendant possessed the methamphetamine he knew the methamphetamine to be a controlled substance.

[CR Doc. 16 at 1] (paragraph numbers omitted).

On February 4, 2020, a Rule 11 hearing came before a United States Magistrate Judge. See [CR Doc. 17] (Acceptance); [CR Doc. 19] (Courtroom Recording). Petitioner stated under oath

3

Case 3:19-cr-00221-FDW-DCK   Document 33   Filed 08/08/22   Page 3 of 19

that he received a copy of the Indictment, discussed it with counsel, and fully understood the charge and the maximum and minimum penalties that could apply to him. [CR Doc. 17 at 1]. He admitted that he is, in fact, guilty of Count One. [Id. at 3]. Petitioner agreed that he understood that pleading guilty may cause him to be deprived of certain civil rights, and that he discussed with counsel how the sentencing guidelines may apply to his case; that the Court would not be able to determine the sentence until a PSR has been prepared and Petitioner has had an opportunity to comment on it; he may receive a sentence that is different from that called for by the guidelines; and he has no right to withdraw the plea even if he receives a sentence more severe than he expects. [Id. at 2]. Petitioner acknowledged the rights he was waiving by pleading guilty, including the waiver of his appeal and post-conviction rights, and stated his understanding that the case would proceed directly to sentencing. [Id. at 3].

The Plea Agreement was summarized in open court. [Id.]. Petitioner confirmed that he understood and agreed with the terms of the Plea Agreement, including the waiver of his appellate and post-conviction rights. [Id.]. Petitioner stated that he read the Factual Basis, understood it, and agreed with it. [Id.]. Petitioner stated that nobody threatened, intimidated, or forced him to plead guilty, and that nobody made any promises of leniency or a light sentence to induce him to plead guilty. [Id.]; [CR Doc. 19 at 9:25-9:40]. Petitioner agreed had enough time to discuss any possible defenses with his lawyer, was satisfied with counsel's services, and thanked counsel "for everything he's done for me." [CR Doc. 17 at 3]; [CR Doc. 19 at 9:50-10:03]. He apologized "to the community" and to his children for his bad decisions and mistakes. [CR Doc. 19 at 10:20-10:39].

The Presentence Investigation Report (PSR) includes the facts set forth in the Factual Basis. [CR Doc. 23 at ¶ 8]. It also includes a Statement of Relevant Conduct that sets

4

forth facts addressing the two drug buys involving Petitioner and a confidential informant (CI) that were charged in Counts One and Two. [Id. at ¶¶ 12-13]. The first buy, on October 13, 2016 involved 27.2 of 99% pure methamphetamine, which amounts to 26.9 grams of actual methamphetamine; and the second buy on October 23, 2016 involved 27.9 grams of 99% pure methamphetamine, which amounts to 27.5 grams of actual methamphetamine. [Id.]. The PSR scored the base offense level as 30 because the offense is a violation of § 841(a)(1) and the total amount of actual methamphetamine that was known to or reasonably foreseeable by Petitioner, including relevant conduct, was 54.4 grams pursuant to U.S.S.G. § 2D1.1(a)(5). [Id. at ¶ 19]. Three levels were deducted for acceptance of responsibility, resulting in a total offense level of 27. [Id. at ¶¶ 26-28]. Petitioner had 13 criminal history points and two more points were added because Petitioner committed this offense while he was under a criminal justice sentence pursuant to U.S.S.G. § 4A1.1(d), for a total of 15 criminal history points and a criminal history category of VI. [Id. at ¶¶ 53-55]. The resulting advisory guideline range was 130 to 162 months' imprisonment. [Id. at ¶ 9].

At the time of sentencing, the Court granted the Petitioner a two-level role reduction, which resulted in a total offense level of 25 and reduced the guideline range to 110 to 137 months' imprisonment. See [CR Doc. 27] (Statement of Reasons). The Court sentenced Petitioner to 120 months' imprisonment followed by four years of supervised release in a Judgment entered on September 10, 2020. [CR Doc. 26]. Petitioner did not appeal.

On August 5, 2021,[1] the Petitioner filed a Letter in the criminal case, stating that he "would like to file a motion for a 2255 ineffective assistan[ce] of counsel," because counsel refused to

---

[1] The postmark date is used as the filing date because Petitioner did not certify the date on which he placed the Letter, dated August 3, 2021, in the prison's mail system. See Houston v. Lack, 487 U.S. 266, 276 (1988) (establishing the prisoner mailbox rule); Rule 3(d), 28 U.S.C. foll. § 2255 (addressing inmate filings).

allow him to accept a favorable plea offer; he also claimed that he had limited access to a law library during the time he had spent in transit and in COVID-19 modifications and quarantine. [CR Doc. 28]. On November 4, 2021, the Court issued an Order providing Petitioner with Castro[2] warnings,[3] and granting him the opportunity to object to the recharacterization and to file a superseding amended § 2255 petition, subject to all applicable timeliness and procedural requirements. [CR Doc. 30]. Petitioner did not object to the recharacterization and, therefore, the Court opened the instant civil action. [Doc. 2].

Petitioner filed the instant superseding Amended Motion to Vacate on January 7, 2022. [Doc. 3]. He raises the following claim *verbatim*:

> Ineffective Assistants of Counsel. My attorney Anthoney Sheers stated on his first appearance that there was a nice plea on the table for 7 to 9 years for possession with intent to sell 26 grams of methamphetamines. We talked about the situation and said he was putting in for a continuance, he thought he could do better. The next day I had my father call him to tell him I wanted to sign the plea. He said he wasn't ready for me to sign yet, why I don't know. He came back two months later with a plea for 5 to 40 years for possession to sell 54 grams of methamphetamines. Almost getting me to 11 to 14 years, but receiving 120 months. I feel like my attorney took a chance at his on will and lost doing what he wanted to do not what I thought was best for myself. I felt my lawyer was incompetent as counsel, and took a gamble with my freedom & lost.

[Id. at 4] (errors uncorrected).

The United States filed a Response arguing that the claim should be denied because Petitioner failed to demonstrate ineffective assistance of counsel. [Doc. 9]. Petitioner filed a Reply on May 25, 2022, reiterating his § 2255 claim. [Doc. 13]. In the Reply, Petitioner also requests leave to amend with a new claim that counsel's misadvice about his criminal history and career

---

[2] United States v. Castro, 540 U.S. 375 (2003).

[3] The Order also denied his request for the appointment of counsel, and addressed a second *pro se* Letter [CR Doc. 29] that is not relevant to this discussion.

offender exposure coerced him to plead guilty. [Id. at 7-8]. Supporting materials are attached to the Reply.

Also on May 25, 2022, Petitioner filed a Motion to Amend in which he claims that: inmates in the federal Bureau of Prisons ("BOP") were restricted to their cells beginning in March 2020; he lacked access to legal material and a law library to perfect his Motion to Vacate for the "entire year of statute of limitations to file his 2255;" and these extraordinary circumstances prevented him from discovering new claims that he seeks to present. [Doc. 14]. In a Motion to Expand the Record, Petitioner asks the Court to consider "all necessary documents" including affidavits, FOIA records, BOP memoranda. [Doc. 15 at 1].

Petitioner filed a Motion to extend the time to reply to the United States' Response, which was granted [Docs. 17, 18], and a second Motion to extend is presently pending [Doc. 19].[4] Petitioner filed his Reply on July 20, 2022. [Doc. 20]. A proposed Second Amended Motion to Vacate [Doc. 20-1] is attached to the Motion, in which Petitioner claims *verbatim*:

> Ineffective Assistance of Counsel. 1. Counsel turned down a more favorable plea, despite Turner's request to sign it. Counsel urged Turner to sign a second plea that resulted in a longer sentence. 2. Counsel gave erroneous advise claiming Turner was a career offender, which caused him not to sign first plea, and coherced him into signing the second plea to avoid the career offender enhancement at trial.

[Doc. 20-1 at 5] (errors uncorrected).

The United States opposes the Motion to Amend, arguing that it is untimely and meritless. [Doc. 16].

## II. SECTION 2255 STANDARD OF REVIEW

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution

---

[4] The pending Motion for Extension of Time to Reply [Doc. 19] will be denied as moot, as the Reply has now been filed.

or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

### III. DISCUSSION[5]

#### A. Amended Motion to Vacate

In his timely Amended Motion to Vacate [Doc. 3], Petitioner contends that counsel was ineffective for ignoring his instruction to accept the initial plea offer, which resulted in his acceptance of a less favorable offer and a higher sentence.

The Sixth Amendment to the U.S. Constitution guarantees that, in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. Const. Amend. VI. To show ineffective assistance of counsel, a petitioner must first establish deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). The deficiency prong turns on whether "counsel's representation fell below an objective standard of reasonableness ... under prevailing professional

---

[5] Petitioner's claims have been liberally construed, restated, and renumbered. Any argument or subclaim which is not specifically addressed in this Order, has been considered and rejected.

norms." Id. at 688. A reviewing court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 689). The prejudice prong inquires into whether counsel's deficiency affected the judgment. See Strickland, 466 U.S. at 691. A petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. A petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a reviewing court need not even consider the performance prong. Strickland, 466 U.S. at 670.

The right to the assistance of counsel during criminal proceedings extends to the plea-bargaining process. See Missouri v. Frye, 566 U.S. 134 (2012). Thus, criminal defendants are "entitled to the effective assistance of competent counsel" during that process. Lafler v. Cooper, 566 U.S. 156, 162 (2012) (internal quotation marks omitted); Merzbacher v. Shearin, 706 F.3d 356, 363 (4th Cir. 2013). "[A]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." Frye, 566 U.S. at 145. In order to establish deficient performance, a petitioner must demonstrate that trial counsel's advice during plea negotiations "fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688; see Merzbacher, 706 F.3d at 363 (applying Strickland standard for deficient performance in plea-negotiation context). To demonstrate prejudice where counsel's allegedly deficient performance led to the rejection of a plea offer, a petitioner must demonstrate that: but for counsel's ineffective advice, a reasonable probability exists "that the defendant would have accepted the plea and the prosecution would not have

9

withdrawn it in light of intervening circumstances;" the court would have accepted the offer; and the defendant would have been convicted of less serious charges or received a less severe sentence than the judgment actually imposed. Lafler, 566 U.S. at 164; see United States v. Hall, 771 F. App'x 226, 227 (4th Cir. 2019).

Here, Petitioner contends that: in early October 2019, counsel told him that "there was a plea on the table for 7-9 years for possession with intent to sell 26 grams of methamphetamine;" Petitioner instructed his father to call counsel and tell him that Petitioner wanted to accept that offer; Petitioner's father did so, but counsel refused because he thought he "could do better;"[6] yet the second plea, that Petitioner ultimately accepted, raised the amount of methamphetamine to 54 grams and increased his sentencing range to between 11 and 14 years' imprisonment. [Doc. 3 at 4]; see also [Doc. 13] (Reply); [Doc. 13-1 at 3] (Affidavit of Petitioner's father).

The Government has filed the first proposed plea agreement ("First Offer") and proposed factual basis ("First Factual Basis") that the prosecutor emailed to defense counsel on October 1, 2019. [Doc. 9-1 at 1] (email); [Doc. 9-1 at 2-8] (First Offer); [Doc. 9-1 at 9] (First Factual Basis). The First Offer provides that:

> Petitioner would plead guilty to Count One, "POSSESSION WITH INETNT TO DISTRIBUTE FIVE (5) GRAMS OR MORE OF ACTUAL METHAMPHETAMINE, as set forth in the Bill of Indictment;"
>
> Count Two would be dismissed;
>
> Petitioner's maximum and minimum sentences are "a minimum term of FIVE (5) TO FORTY (40) years of imprisonment;"
>
> The Court would consider the advisory guidelines, that any estimate of the likely sentence was a prediction rather than a promise, that the Court would have the final discretion to impose "any sentence up to the statutory maximum," and that the Court would not be bound by the parties' recommendations; and

---

[6] Petitioner suggests, in his Reply, that counsel asked whether he could record the conversation with his father, and his father consented. [Doc. 13 at 3]. However, the Petitioner has not provided the Court with any such recording.

10

The parties would jointly recommend that the plea is timely for purposes of U.S.S.G. § 3E1.1(b), if applicable; the career offender or armed career criminal provisions of the guidelines may be used to determine the sentence, if applicable; the parties may argue their respective positions on any other specific offense characteristics, etc., and may seek a departure or variance from the applicable guideline range; and the United states will inform the Court of "all facts pertinent to the sentencing process and will present any evidence requested by the Court."

[Doc. 9-1 at 4-5, ¶¶ 1-2, 5, 7].

The First Offer refers to the First Factual Basis, which is identical to the Factual Basis that Petitioner ultimately agreed to, save for the correction of a typographical error.[7] [Id. at 9]. The First Offer and First Factual Basis provide that "the Factual Basis … does not necessarily represent all conduct relevant to sentencing;" the United States may submit a "Statement of Relevant Conduct;" and additional relevant facts may be provided prior to or at sentencing. [Id. at 9; id. at 4, ¶¶ 10-11].

In his Reply, Petitioner acknowledges that the First Offer was the "First Plea." [Doc. 13 at 2-3]. He argues in the Reply that the agreed drug amount was "at least five grams" in accordance with the First Offer, rather than 26.9 grams as he had in initially argued. He nevertheless maintains that "a plea for 7-9 years existed in early Oct. 2019." [Id. at 3]. He explains that counsel "would have come to [the 7-9 year] numbers and conveyed that to his client" because a plea to a single § 841 offense with relevant conduct of 26.9 grams would have resulted in an offense level of 26, minus three levels for acceptance of responsibility, and minus two levels for role, would have resulted in a total offense level of 23 and a guideline range of between 7 and 9 years' imprisonment. [Id. at 4].

Assuming *arguendo* that counsel told Petitioner that the First Offer would have guaranteed

---

[7] See [Doc. 9-1 at 9, ¶ 1] (substituting another defendant's name for Petitioner's).

a sentence of between 7 and 9 years' imprisonment, and that the drug amount was limited to either 5 grams or 26.9 grams, Petitioner cannot demonstrate prejudice. The First Offer includes no joint recommendation that Petitioner should receive a sentence of between 7 and 9 years, or that the drug amount would be limited to either 5 grams or 26.9 grams. To the contrary, the First Officer specifically provides that: Petitioner's sentence could be anywhere between 5 and 40 years' imprisonment, any may include enhanced sentencing; the Government could file a Statement of Relevant Conduct that includes facts beyond those included in the First Factual Basis; and any sentencing prediction by counsel is not binding.

In short, the plea offer that Petitioner wishes had existed did not, and any misadvice by counsel did not create an offer on those terms. In any event, a plea agreement with a binding sentencing range and drug amount would not have been acceptable to the Court. Counsel's alleged misadvice did not result in more severe charges, a higher sentence, or any other negative effect on Petitioner. Therefore, this claim is denied.

**B.     Motion to Amend**

In his Motion to Amend [Doc. 14] and in his Reply [Doc. 13], Petitioner asks the Court for leave to amend his Motion to Vacate to add a claim that counsel's alleged misadvice about the career offender enhancement rendered his plea involuntary.

A one-year statute of limitation applies to motions to vacate under § 2255, which runs from the latest of:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme

12

> Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

For an untimely claim relate back to the original timely-filed pleading, it must be shown that "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B); see Rule 12, 28 U.S.C. foll. § 2255 (the Federal Rules of Civil Procedure apply to 2255 actions to the extent that they are not inconsistent with § 2255 or the § 2255 rules). In the context of a habeas motion, "conduct, transaction, or occurrence" does not mean the same "trial, conviction, or sentence," such that any claim that relates to the prior conviction or sentence challenged in a habeas motion is considered timely, no matter how long after the original motion it is filed. Rather, a proposed amendment relates back to the date of the original motion if it "state[s] claims that are tied to a common core of operative facts." Mayle v. Felix, 545 U.S. 644, 664 (2005).

An otherwise time-barred petition is entitled to equitable tolling in "those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation against the party." Hill v. Braxton, 277 F.3d 701, 704 (4th Cir. 2002) (citing Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000)); United States v. Prescott, 221 F.3d 686, 688 (4th Cir. 2000)("§ 2255's limitation period is subject to equitable modifications such as tolling."). Equitable tolling of petitions for collateral review is available only when the petitioner demonstrates "(1) he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Holland v. Florida, 560 U.S 631, 649

(2010); see Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005) ("Generally, a litigant seeking equitable tolling bears the burden of establishing two elements.").

Petitioner's Judgment became final on September 24, 2020 when the 14-day period to file a notice of appeal expired. See Fed. R. App. P. 4(b)(1), (b)(6); United States v. Osborne, 452 F. App'x 294, 295-96 (4th Cir. 2011). Petitioner therefore had until September 24, 2021 to file a timely § 2255 Motion to Vacate, which he did. [Doc. 1]. The Amended Motion to Vacate [Doc. 3] raises the same claim as the original Motion to Vacate and thus relates back. See Mayle, 545 U.S. at 664.

Petitioner raised his present involuntary plea claim for the first time in his May 25, 2022 Reply [Doc. 13], and he raised it again in his June 20, 2022 Second Amended Motion to Vacate [Doc. 20-1]. Both of these documents were filed well outside the one-year statute of limitations and are untimely pursuant to § 2255(f)(1). The new claim that counsel's misadvice about sentencing enhancements rendered his guilty plea involuntary does not involve the same core of operative fact as Petitioner's original claim that counsel refused to allow him to accept the First Offer. See Mayle, 545 U.S. at 664. Thus, it does not relate back to the original timely Motion to Vacate.

It appears that Petitioner may be attempting to rely on the newly discovered evidence exception in § 2255(f)(4). However, he has failed to identify any new facts whose discovery would re-start the one-year statute of limitations. Petitioner's new claim is based on allegedly mistaken advice that counsel provided about sentencing before Petitioner pleaded guilty. The facts were therefore known to Petitioner during the entire statutory period. That Petitioner may have discovered the legal significance of those facts at a later time is insufficient. See McMeans v. United States, 2013 WL 1789711 (W.D.N.C. April 26, 2013) ("'facts' as used in Section

14

Case 3:19-cr-00221-FDW-DCK   Document 33   Filed 08/08/22   Page 14 of 19

2255(f)(4) refers to an actual or alleged event or circumstance, not to the date a petitioner realizes its legal significance.").

Nor has Petitioner demonstrated that equitable tolling applies. Petitioner claims that his transport within BOP was lengthy, and that he has experienced limited law library access and other difficulties due to COVID-19 lockdowns and prison restrictions. He has filed materials including BOP memoranda in support of that argument. See [Doc. 13-2 at 2-14]; [Doc. 19-1 at 1-2]. However, he fails to explain why he was able to timely file the original Motion to Vacate, yet these conditions somehow prevented him from timely raising the involuntary plea argument. As previously discussed, Petitioner has always known the facts underlying the involuntary plea claim, and he has failed to explain how any of the conditions at issue prevented him from raising that claim sooner with the exercise of due diligence. Accordingly, the Motion to Amend will be denied.

Even if the Second Amended Motion to Vacate were timely filed, it would be denied on the merits. Petitioner's contention that counsel's misadvice about his criminal history and the career offender enhancement[8] coerced him to plead guilty so that he could avoid enhanced sentencing is conclusively refuted by the record. [Doc. 20-1 at 5]. The record reveals that Petitioner's guilty plea was knowingly and voluntarily entered with full knowledge of all its consequences, including that he could be sentenced anywhere between a minimum of five years and a maximum of 40 years in prison. See generally [CR Docs. 15, 16]. The Plea Agreement does not include any sentencing guarantees. To the contrary, the Plea Agreement specifically states that the career offender or armed career criminal provision may be used in determining Petitioner's sentence, if applicable. [CR Doc. 15 at ¶ 8]. Petitioner stated under oath at the Rule 11 hearing

---

[8] Petitioner refers to the "career criminal" enhancement in his Reply. [Doc. 13 at 7]. The analysis for the involuntary plea claim is the same regardless of whether Petitioner is referring to the armed career criminal enhancement or the career offender enhancement.

15

that he understood and agreed with the Plea Agreement. See [CR Docs. 17, 19]. Petitioner further stated, under oath, that he was not threatened, intimidated, or forced to plead guilty, and that he had not been promised anything outside of the Plea Agreement, such as a lenient sentence, in exchange for his plea. See [Doc. 19 at 9:25-9:40]. Petitioner's present self-serving contention that he pleaded guilty to avoid career offender sentencing is belied by Petitioner's own sworn statements to the contrary, and is rejected. See Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); see, e.g., United States v. Lemaster, 403 F.3d 215, 221 (4th Cir. 2005) ("[A]llegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'").

Moreover, Petitioner has failed to demonstrate a reasonable probability that he would not have pleaded guilty but for counsel's alleged misadvice. It would not have been rational for Petitioner to proceed to trial in light of the strong evidence of his guilt as set forth in the Factual Basis and Statement of Relevant Conduct, and the great benefit he obtained by pleading guilty, *i.e.*, the dismissal of a second serious charge and a three-level reduction in the offense level for acceptance of responsibility. Petitioner has failed to demonstrate ineffective assistance of counsel and, accordingly, the Second Amended Motion to Vacate would be denied on the merits even if it had been timely filed.

**C.     Motion to Expand the Record**

In his Motion to Expand the Record [Doc. 15], Petitioner asks the Court to consider the

16

Case 3:19-cr-00221-FDW-DCK    Document 33    Filed 08/08/22    Page 16 of 19

following materials in support of his Motion to Vacate: Petitioner's affidavit; [9] Petitioner's father's affidavit; "Freedom of Information Act request for recording of phone conversations to defense counsel in the instant case;" BOP memoranda and documents; articles; and "all necessary documents, and other evidences [sic] included with this Motion."

Petitioner seeks relief under Rule 7 of the Rules Governing § 2255 Proceedings, which provides that "the judge may direct the parties to expand the record by submitting additional materials relating to the motion." Rule 7, 28 U.S.C. foll. § 2255

The Motion is moot to the extent that the Court has considered the materials that Petitioner has filed and finds that no expansion of the record is required. However, to the extent that Petitioner asks the Court to consider evidence that has not been filed with the Court, the Motion will be denied. Petitioner's reference to "all necessary documents" is too vague to demonstrate that the record should be expanded, or what documents are needed. As to the purported FOIA request and recording of a phone conversation between Petitioner's father and counsel, assuming that such evidence exists, it would have no bearing on the outcome of this proceeding. The Court assumed the truth of Petitioner's allegations about the First Offer, and accepted his father's affidavit recounting his phone call with counsel. Additional evidence about the phone call is irrelevant because the Court found that, even if counsel performed deficiently, Petitioner failed to demonstrate prejudice. Accordingly, no expansion of the record is warranted and Petitioner's

---

[9] The Court notes that Petitioner's "Affidavit," which is signed under penalty of perjury, qualifies each of its factual assertions as being made "on information and belief." [Doc. 13-1 at 1-2]. This language deprives the "Affidavit" of any evidentiary value. See United States v. Jaramillo, 2021 WL 607090, at *9 (E.D. Va. Feb. 16, 2021) (finding that affidavits and declarations under penalty of perjury on "information and belief" are nothing more than mere pleading allegations); Darcy v. United States, 2021 WL 92968, at *7 (W.D.N.C. Jan. 11, 2021) (rejecting allegations based "on information and belief" that were conclusory did not identify any objective evidence). In any event, the Court has considered the "Affidavit" and none of the information contained in it would have changed the outcome of this proceeding even if it had been properly presented to the Court.

17

Motion is denied.[10]

## IV. CONCLUSION

For the foregoing reasons, the Amended Motion to Vacate is denied, Petitioner's Motion to Amend is denied, the Second Amended Motion to Vacate is dismissed and denied, Petitioner's Motion to Expand the Record is denied, and Petitioner's Motion for Extension of Time is denied as moot.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Amended Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 [Doc. 3] is **DENIED**.

2. Petitioner's Motion to Amend [Doc. 14] is **DENIED**.

3. Petitioner's Motion to Expand the Record [Doc. 15] is **DENIED**.

4. Petitioner's Motion for Extension of Time [Doc. 19] is **DENIED AS MOOT**.

5. Petitioner's Second Amended Motion to Vacate [Doc. 20-1] is **DISMISSED** as time-barred and, alternatively, it is **DENIED** on the merits.

6. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive

---

[10] A Motion seeking discovery would also be denied because Petitioner has failed to demonstrate good cause, and the evidence he seeks would not change the outcome of this proceeding. See generally Rule 6, 28 U.S.C. foll. § 2255 (a judge may authorize discovery for good cause).

procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

7. The Clerk is instructed to close this case.

Signed: August 8, 2022

Frank D. Whitney
United States District Judge